**RYAN W. STITT**
California State Bar No. 273651
**STITT VU TRIAL LAWYERS APC**
185 W F St., Ste. 100-K
San Diego, California 92101
Telephone: (619) 255-0553
rstitt@stittvu.com

Attorneys for Defendant
ZIFENG WU

UNITED STATES DISTRICT COURT

SOUTHISN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>ZIFENG WU,<br><br>        Defendant. | CASE NO.:   23CR887-AJB<br><br>MOTION TO SET BAIL |

## I. INTRODUCTION

Mr. Wu is charged in a nine-count indictment with the illegal importation of various types of seafood. Mr. Wu has no prior criminal history, strong ties to San Diego, and the nature of the charges trigger a presumption that the Court set bond. At the detention hearing earlier this week, the Court detained Mr. Wu as a risk of flight. An important factor to the Court's ruling was the government's allegation that Mr. Wu owned not one, but two homes that could be used for bond. Counsel investigated the government's allegation and it is false – Mr. Wu owns one home and the Court should set a bond that allows Mr. Wu to post it using his family's home in Chula Vista.

//

//

## II. STATEMENT OF FACTS

Mr. Wu has lived in the San Diego area for eight years, and he owns a home in Chula Vista with his wife that is valued at roughly $680,000 according to online real estate applications. He has three United States Citizen children, and two of his children live with him in Chula Vista. The third lives with a grandparent in China and is planning to return to the United States to live in the near future. The grandparent has an approved residency application and the family was in the process of making living arrangements at the time Mr. Wu was arrested.

At the detention hearing, the government proffered that roughly $600,000 cash was seized at Mr. Wu's house in Chula Vista and that Mr. Wu owned a second home in National City. The government argued that this was evidence of Mr. Wu's access to substantial assets and that a property bond for only one of his two homes was insufficient. The government argued that the National City home was purchased by a "straw buyer" who is Mr. Wu's nephew. It stated that the title for the National City home was found at Mr. Wu's Chula Vista residence in support of its argument that Mr. Wu was the true owner. And it cited to checks written by Mr. Wu and his wife to the owner of the National City home that stated "loan" in the memorandum section of the check.

During the detention hearing, Mr. Wu represented that he owned a single home and he was refuted the government's allegation that he owned a second home. After the hearing, counsel investigated the government's claim and learned that the National City home is owned by Mr. Wu's wife's brother, not his nephew.

Counsel spoke to the brother and reviewed financial documents provided by him and Mr. Wu's wife. He confirmed that he is the true owner of the National City home, and that he is not a "straw buyer." He borrowed money from family members, including Mr. Wu and his wife, in order to purchase the home. He has paid back much of the loan through a transfer into Mr. Wu's wife's bank account which counsel verified. He further has made some payments in cash to repay part

of the loan. The brother works in the restaurant industry and has legitimate employment that is the source of his funds.

The brother rents his National City home and he lives in one of the bedroom's at Mr. Wu's Chula Vista home. He has a safe in his room in Mr. Wu's house and he keeps cash, his house title, and other important personal documents. He does not keep those documents in the National City home because it is rented and he does not live there. Counsel reviewed his bank statements and he lists the Chula Vista address as his address for his bank account.

The Chula Vista home is a critical asset for Mr. Wu and also his broader family. In addition to his brother-in-law, his sister and her two children live in an accessory dwelling unit on the property.

The government has not yet produced any discovery in Mr. Wu's case, but based on discussions with family members, the majority of the money seized at the Chula Vista home is not Mr. Wu's and instead belongs to other family members. The majority of the money was seized from a detached dwelling and from the brother's safe, not from a location accessible to Mr. Wu.

For reference, the government's indictment against Mr. Wu alleges less than $70,000 in the criminal forfeiture allegations, which is a far more realistic estimate of the loss amount. None of the charges in the indictment carry a minimum mandatory sentence, and the government estimates that the sentencing guidelines are a relatively modest 41 months. Consequently, the Court should set a property bond that Mr. Wu can post with his Chula Vista residence.

### III. A PROPERTY BOND USING THE CHULA VISTA RESIDENCE WOULD ASSURE MR. WU'S APPEARANCE AT FUTURE PROCEEDINGS.

"[F]ederal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail." *United States v. Motamedi*, 767 F.2d 1403, 1407-08 (9th Cir. 1985) (reversing district court's order of detention based on flight risk of an Iranian citizen, who maintained large foreign bank accounts to

which the Iranian government made the majority of deposits, was charged with exporting military items without a license, and had been warned by U.S. Customs and the FBI that his activities were illegal). The Ninth Circuit has thus held that "[o]nly in rare circumstances should release be denied." *Id*. at 1405. Additionally, any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id*.

To justify detention based on a risk of flight, the government must demonstrate that there is no condition, or combination of conditions, that would "reasonably assure" a defendant's appearance at future proceedings if he is released on bond. *Id.* at 1406-07. The government must demonstrate that there is no condition, or combination of conditions, that would reasonably assure Mr. Wu's appearance at future proceedings if she is released on bond. *Motamedi*, 767 F.2d at 1406-07. The government cannot meet this high burden here, and this Court should order Mr. Wu released.

**A.   The  § 3142(g) Factors Favor Release.**

In assessing whether the government has met its burden, this Court must consider the enumerated factors in § 3142(g), including: 1) the nature and circumstances of the offense; 2) the weight of the evidence toward the alleged offense; 3) the defendant's history and characteristics; and 4) the nature and seriousness of the danger to any person or the community that would be posed by release. *See* 18 U.S.C. 3142(g). Here, these factors favor release.

1. <u>The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.</u>

Mr. Wu is accused of importing illegal seafood. The statutory maximum sentence is 20 years in prison and, according to the government, the United States Sentencing Guidelines range is 41 months. There is no minimum mandatory sentence, and the relatively modest sentencing guidelines favor release.

4                                       23CR887-AJB

MR. WU'S MOTION TO SET BOND

2. The weight of the evidence.

Based on the allegations in the indictment in this case, the government views the weight of their evidence against Mr. Wu as strong. The Ninth Circuit has repeatedly held, however, that this is the least important factor to be considered by this Court in determining bail. *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986) ("Section 3142 neither requires nor permits a pretrial determination that the person is guilty; the evidence of guilt is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community."). Here, even if all of the allegations alleged in the indictment are true, none indicate a risk of flight. All of the allegations occurred in San Diego over a span of eight years while Mr. Wu was living here. The delay in presenting charges and arresting Mr. Wu cuts against the government's argument that he is a risk of flight.

3. The history and characteristics of the person.

Section 3142(g)(3) lists a number of factors regarding the history and characteristics of a person to be considered in making the release determination. These factors also weigh in favor of release.

   a. *The person's character*

Mr. Wu's personal character weighs in favor of setting bond. He has no prior criminal convictions or arrests, and his family is supportive as evidenced by his wife's presence in court.

   b. *Physical and mental condition*

Mr. Wu's physical condition is good, and this factor is neutral in the bond analysis.

   c. *Family ties*

Mr. Wu has strong family ties to California. His wife and two United States Citizen children live here. His third child is also a citizen and is in the process of moving here with a grandparent. Additionally, Mr. Wu has extended family that live in California including his brother-in-law, sister and her two children.

     d.  *Employment and education*

Mr. Wu is a high school graduate and he is not employed in San Diego, which is consistent with his visa restrictions.

     e.  *Financial resources*

Mr. Wu owns a home in Chula Vista with his wife, and they own it outright. The value is roughly $680,000 and this is their principal asset. The Court should set a bond that Mr. Wu can post with his home.

     f.  *Length of residence in the community*

Mr. Wu has lived in San Diego for eight years.

     g.  *Community ties*

As noted above, Mr. Wu has substantial community ties. His wife, two of his United States Citizen children, brother-in-law, sister and her two children all live in the San Diego area.

     h.  *Past conduct*

Mr. Wu's past conduct is positive with respect to bond. He has no prior criminal history or failures to appear in court.

     i.  *History relating to drug or alcohol abuse*

Mr. Wu does not abuse drugs or alcohol, and this factor favors setting bond.

     j.  *Criminal history*

Mr. Wu does not have criminal history and this factor favors setting bond.

     k.  *Record concerning appearance at court proceedings*

Mr. Wu has no failures to appear, and this factor favors setting bond.

     l.  *Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law*

Mr. Wu has no law enforcement contacts and was not on parole or probation at the time of his arrest. His arrest in this case is his first ever arrest, and this factor favors setting bond.

4. <u>The nature and seriousness of the danger to any person or the community that would be posed by the person's release.</u>

Apart from the seriousness of the present charges already addressed above, there is no evidence that Mr. Wu poses any danger whatsoever to any person or community. The government has not alleged that Mr. Wu is a danger to the community, and the Court correctly ruled that he is not.

5. <u>Mr. Wu's immigration status does not trigger a presumption of detention</u>

Mr. Wu is a Chinese citizen with a visa to be present in the United States. Mr. Wu's immigration status is relevant for weighing his ties to the community, but it is not a reason to deny him bond. *United States v. Santos-Flores*, 794 F.3d 1088, 1091-92 (9th Cir. 2015).

## IV. THERE EXIST A COMBINATION OF CONDITIONS THAT COULD BE SET WHICH WOULD ASSURE MR. WU'S APPEARANCE AT FUTURE PROCEEDINGS.

In light of the § 3142(g) factors, there exist conditions that would reasonably assure Mr. Wu's appearance in court. Mr. Wu recommends the Court set further conditions of release, including: a property bond posted by the Chula Vista home in the amount of $680,000 and require Mr. Wu to be monitored by GPS while on release. These conditions would

//
//
//
//
//
//
//
//
//
//

## V. CONCLUSION

The government cannot meet its heavy burden of showing that no condition or combination of conditions for Mr. Wu's release could reasonably assure his appearance in court. Mr. Wu has proposed conditions of release that entail strict supervision and would reasonably assure his appearance to all future court appearances. Accordingly, Mr. Wu respectfully requests that this Court order release.

Respectfully submitted,

Dated: May 18, 2023

*s/ Ryan W. Stitt*
STITT VU TRIAL LAWYERS APC
Attorneys for Defendant
Email: RStitt@stittvu.com